**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LESLIE HARPER, ALICIA DOSTER** **and SHUAH LEVI,** <br>            **Plaintiffs,** <br><br>      **v.** <br><br> **BOROUGH OF POTTSTOWN,** **POTTSTOWN POLICE DEPARTMENT,** **SERGEANT MICHAEL MARKOVICH,** **individually and in his official capacity,** **and CHIEF OF POLICE MARK** **FLANDERS,** <br>            **Defendants.** | **CIVIL ACTION NO. 11-1939** |

Baylson, J.                                                    March 21, 2013

## MEMORANDUM OF LAW RE: MOTION FOR SUMMARY JUDGMENT

Plaintiffs Leslie Harper, Alicia Doster, and Shuah Levi filed claims under 42 U.S.C. § 1983 against Defendants Borough of Pottstown, the Pottstown Police Department, Sergeant Michael Markovich, and Chief of Police Mark Flanders, for violating their rights under the Fourth and Fourteenth Amendments of the U.S. Constitution during the execution of a search warrant at Harper's home. (Amended Complaint) (ECF 4). Plaintiffs also brought claims under Pennsylvania tort law, alleging malicious prosecution, false arrest, false imprisonment, intentional infliction of emotional distress and negligent infliction of emotional distress. (Id.). Defendants moved for summary judgment. For the reasons below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**I.      Facts and Procedural History**

The parties' Statements of Undisputed Facts show that many operative facts are not in dispute. Where there are facts in dispute, the Court notes such below. The Court considers the facts in the light most favorable to the non-moving party, i.e., Plaintiffs. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

In February 2009, Sergeant Markovich of the Pottstown Police Department received a report from a concerned citizen of Pottstown that he had seen an individual engaging in transactions, believed to be drug transactions, in and around the 1100 block of East High Street. (Def. Statement of Undisputed Facts ¶ 4) (ECF 36). That same month, Sergeant Markovich received information from a confidential informant that an individual named "Elijah" was selling heroin, crack cocaine, and marijuana from 1116 East High Street. (<u>Id.</u> ¶ 5). The informant related that individuals known as "50" and "Shoes" were also selling drugs with "Elijah" out of 1116 East High Street. (<u>Id.</u> ¶ 6).

During the months of February and March 2009, Sergeant Markovich performed an investigation of the alleged drug activity at 1116 East High Street. (Aff. of Probable Cause, Def. Ex. A at 3). On two separate occasions, he engaged a confidential informant who related he could purchase heroin from an individual named "Elijah" at 1116 East High Street. (<u>Id.</u> at 4). For each controlled buy, the confidential informant was supplied with U.S. currency and kept under close observation as he walked to 1116 East High Street. (<u>Id.</u>). Each time, Sergeant Markovich observed a black male exit a rear, white door from 1116 East High Street, perform a hand-to-hand transaction with the confidential informant, and reenter the door. (Def. Statement of Undisputed Facts ¶¶ 12-13; Incident Investig. Report, Def. Ex. E, at 6; Markovich Dep., Def. Ex. A, at 10-11). For both sales, the confidential informant turned over a substance confirmed to be heroin. (Aff. of Probable Cause, Def. Ex. A, at 4-5).

The house located at 1116 East High Street has two separate residential units, one on the first floor and one on the second floor. A yellow, front door to the house provides access to each unit. (Pl. Ex. B). Upon entering the yellow door, one enters a foyer area, which opens to two separate doors. (Pl. Ex. C). One door leads the first floor apartment, and the other leads to a staircase that ascends to upper apartment. The staircase is the only way of accessing the second floor apartment. The first floor apartment can also be accessed through a rear, white door to 1116 East High Street, which opens directly to the apartment's kitchen. (Pl. Ex. D).

Plaintiff Leslie Harper was living in the first floor apartment of 1116 East High Street in early 2009, along with her children. She is cousins with Plaintiff Shuah Levi, who lived in New York City at the time but regularly came to Pottstown to see family and friends. (Levi Dep., Def. Ex. C, at 16-20). In March 2009, Levi was visiting Pottstown for an extended period to look for new employment. (Id. at 15, 19). During that visit, he spent time at Harper's apartment. (Id.). Levi was familiar with Elijah Hill, a resident of Pottstown, and would occasionally bring Hill to Harper's apartment. (Id. at 20-21). Levi was sometimes called "Shoes" as a nickname. (Id.).

On March 18, 2009, Sergeant Markovich filed an affidavit of probable cause for a search warrant for "1116 E. High St. 2nd floor Pottstown, Pa." (Aff. of Probable Cause, Def. Ex. A, at 6, 8, 9, Ex. A). After summarizing the results of his investigation in February and March 2009, he concluded: "Based upon my training and experience, as well as the probable cause outlined in this affidavit, I believe that Elijah Hill is trafficking controlled substances within Montgomery County, Pennsylvania, at 1116 E. High St., 2nd floor Pottstown, Pa 19464." (Id. at 8). Sergeant Markovich sought permission to search the second floor apartment of 1116 East High Street because he concluded, mistakenly, that the rear door of the house led to a staircase, which in turn led to the second floor. Both the confidential informant and the other officers involved in the

investigation made the same, incorrect assumption. (Def. Statement of Undisputed Facts ¶ 14).

On March 20, 2009, at 8:50 p.m., a warrant was issued for "1116 E. High St. 2nd floor" and was

signed by a District Justice. (Warrant, Def. Ex. F). It referred to the white door, noting that "[i]n

the back of the house there is a white door." (Id.). The warrant authorized "[t]he search to

include all occupants of 1116 E. High St. 2nd floor Pottstown, Pa due to the fact that the items to

be searched for are small enough to be concealed on their person." (Id.).

At some time on the evening of March 20, 2009, Sergeant Markovich and several other

officers from the Pottstown Police Department arrived at 1116 East High Street. Defendants

contend the officers arrived with warrant in hand at 9:30 p.m.; Plaintiffs contend they arrived at

approximately 8:00 p.m., without a warrant. (Compare Def. Statement of Undisputed Facts ¶ 19;

and Markovich Dep., Def. Ex. B, at 30-31; with Pl. Reply to Undisputed Facts ¶ 19; Doster Dep.,

Def. Ex. K, at 15, 19; and Harper Dep., Def. Ex. D, at 48). At the time of the officers' arrival,

Harper and Levi were watching television in an interior room of the apartment. Harper's

children were playing in a separate room. (Levi Dep., Def. Ex. C, at 27-30; Harper Dep., Def.

Ex. D, at 27). Alicia Doster, Harper's babysitter, was also in the apartment, with her niece.

(Doster Dep., Def. Ex. K, at 22). The officers knocked on the rear door, and it was opened by

Doster. (Harper Dep., Def. Ex. D, at 28). Upon their entry, they realized the door led only to a

first floor apartment. (Def. Statement of Undisputed Facts ¶ 21). However, they decided to

proceed with the search.[1]

---

[1] Defendants contend they knew they were in the right place for two additional reasons. First, Sergeant Markovich immediately turned his head to the right and saw Levi, who he recognized from another controlled drug transaction, in the apartment. Second, the officers immediately smelled marijuana upon entering the apartment. Plaintiffs contest these facts, arguing that marijuana was not being smoked at the time and that Levi was in a part of the apartment that Sergeant Markovich would have been unable to see from the doorway. (Compare id. ¶¶ 22-23; with Pl. Statement of Undisputed Facts ¶¶ 22-23).

As they executed the search, the officers made Harper, Levi and Doster either lie on the ground or sit in chairs, and they placed them in handcuffs. (Levi Dep., Def. Ex. C, at 30-32; Harper Dep., Def. Ex. D, at 28, 34, 40-41; Doster Dep., Def. Ex. K, at 23-24). The officers recovered a marijuana blunt from the "middle room" where Levi was found and a clear bag of a substance alleged to be marijuana, but for which there is no lab report, from Harper's purse. They subjected Harper, Levi and Doster to strip searches – Harper and Doster were searched in a bathroom by a female officer, and Levi by a male officer, in a separate bathroom. (Def. Statement of Undisputed Facts & Pl. Reply, ¶¶ 25-27). No drugs were recovered from Plaintiffs' bodies or clothing, but $650 in cash was recovered from Levi's right book, $360 was recovered from his left boot, and $110 was recovered from his front pants pocket. (Def. Statement of Undisputed Facts ¶ 25). Harper contends that when the search was over, she was taken "outside to wait for the officer with the search warrant." (Harper Dep., Def. Ex. D, at 48). She states she was then given "the paperwork" by Sergeant Markovich, after which the officers left and Harper went inside to clean up. She saw it was "about nine, maybe 9:10." (Id. at 48-49).

Sergeant Markovich filed charges against Harper and Levi for possession of marijuana and drug paraphernalia. (Def. Statement of Undisputed Facts ¶ 29). Harper was never arrested, but Levi was arrested on the night of the search and taken to the Pottstown police station. He spent the night there, was arraigned the next day, and was then released on his own recognizance. (Levi Dep., Def. Ex. C, at 37-38; Incident Investig. Report, Def. Ex. E, at 7). Some time later, Harper appeared for a preliminary hearing, at which she was informed that Sergeant Markovich had dropped her charges. (Harper Dep., Def. Ex. D, at 56; Markovich Dep., Def. Ex.

B, at 47-48).[2]  Levi's prosecution on the marijuana charges went forward and he received a

Section 17 disposition for them. (Def. Statement of Undisputed Facts ¶ 34).

Plaintiffs Harper, Levi and Doster filed a Complaint in this Court on March 18, 2011 and

an Amended Complaint on March 21, 2011. (ECF 1 & 4). The Amended Complaint named the

Borough of Pottstown, the Pottstown Police Department, Sergeant Michael Markovich, and

Chief of Police Mark Flanders, as defendants, and  included seven counts:  (1) an action under 42

U.S.C. § 1983 for violations of Plaintiffs' rights under the Fourth and Fourteenth Amendment,

on account of their subjection to strip searches, false arrest, false imprisonment, and malicious

prosecution;[3] (2) malicious prosecution; (3) false arrest; (4) false imprisonment; (5) intentional

infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) punitive

damages.  (ECF 4). Although the Amended Complaint does not specify whether such is the case,

it appears that Counts II through VII arise under Pennsylvania law.  Defendants filed an Answer

on August 24, 2011 (ECF 7).  After several discovery disputes, hearings, and motions for

sanction, discovery was concluded in November 2012. (ECF 33).  Defendants moved for

summary judgment on November 29, 2012 (ECF 34, 35 & 36), and Plaintiffs responded on

December 28, 2012.  (ECF 42, 43 & 44).

## II.     Standard of Review

---

[2] Sergeant Markovich claims he dropped the charges because Harper agreed to no longer allow
individuals who were the subjects of narcotics investigations to have access to her apartment. (Id. at 49-
50).  Harper contests she made this agreement. (Pl. Reply to Undisputed Facts ¶ 30).

[3] Count I of the Amended Complaint, captioned as "Civil Rights Violations: 42 U.S.C. § 1983; Fourth
and Fourteenth Amendment to the U.S. Constitution," also refers to the Pennsylvania Constitution.  It
states: "Plaintiffs suffered . . . violation of their rights under the laws and Constitution of the United States
of America, in particular the Fourth and Fourteenth Amendments, and 42 U.S.C. § 1983, *as well as their
corollaries under the statutes of the Commonwealth of Pennsylvania*." (Amended Complaint ¶ 39) (ECF
4) (emphasis added).  Section 1983 provides a cause of action to individuals only for the violation of their
rights under *federal* law.  The Court, accordingly, will not consider claims arising under the Pennsylvania
Constitution as they are not part of the Section 1983 action were not pled separately in the Complaint.

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson 477 U.S. at 248. A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Rule 56, the Court must view the facts and all reasonable inferences in the light most favorable to the non-moving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

### III.    Analysis

### A.  Plaintiffs' Claims under Section 1983

The first Count in the Amended Complaint seeks relief under 42 U.S.C. § 1983, which provides a right of action to a plaintiff whose "rights, privileges, or immunities," secured by the U.S. Constitution or laws of the United States, were violated by an official acting under color of law. Nextel Partners Inc. v. Kingston Twp., 286 F.3d 687, 693-94 (3d Cir. 2002). Plaintiffs contend Defendants violated their rights under the Fourth and Fourteenth Amendments of the U.S. Constitution in two manners: first, by submitting Plaintiffs to false imprisonment, false arrest, and malicious prosecution, without sufficient justification; second, by subjecting Plaintiffs to unconstitutional strip searches. Defendants move for summary judgment because they argue no constitutional rights of any Plaintiff were violated; and in the alternative, Defendants are entitled to qualified immunity as a matter of law.

### 1.  Claims based on False Imprisonment, False Arrest and Malicious Prosecution

Plaintiffs' first set of claims under Section 1983 pertains to the detentions, arrests and prosecutions they experienced as a direct result of the search of Harper's home on March 20, 2009. Plaintiffs argue the apartment search was unconstitutional under the Fourth Amendment, and thus it could not supply adequate justification for their seizures. Plaintiffs advance two reasons for why the search was unconstitutional: first, because it was conducted pursuant to an inaccurate warrant; and second, because it was conducted before the warrant was signed. (Pl. Memo. in Opposition to Defs' Mot. for Summary Judgment, at 4) (ECF 44).

As explained below, the Court finds Defendants are entitled to summary judgment with respect to Plaintiff's first ground for challenging the search, but not with respect the second. As to Plaintiffs' first argument, regarding the inaccuracy of the warrant, the undisputed facts show Defendants acted reasonably in executing the warrant because despite its erroneous description of the target apartment as located on the second floor, Defendants were able, upon entry, to limit their search to the area for which there was probable cause to search in the first place. As to Plaintiff' second argument, concerning the timing of the search, the Court finds there is a genuine dispute of material fact about when the search was undertaken.

### a. Constitutionality of the Search

First, Plaintiffs contend Defendants' search of Harper's home was unconstitutional because the warrant had authorized a search of "1116 E. High Street 2nd floor," but Defendants executed a search of the first floor apartment at the same address. (See Warrant, Def. Ex. F; Aff. of Probable Cause, Def. Ex. A, at 4-6). Plaintiffs argue that when the officers entered the door and realized it did not lead to a second floor apartment, they should have ceased their search and obtained a new warrant.

The Court finds that based on the undisputed facts in the record, the officers' execution of the warrant was both constitutionally sound and sufficiently reasonable so as to entitle them to qualified immunity. Under the Fourth Amendment, a search warrant must describe the location to be searched with particularity. Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). The controlling test for particularity is not technical accuracy, but whether "the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503 (1925); see also United States v. Burke, 784 F.2d 1090, 1092 (11th Cir. 1986) ("An erroneous description of premises to be searched does not necessarily render a warrant invalid."); United States v. Sklaroff, 323 F. Supp. 296, 321 (S.D. Fla. 1971) ("[T]he determining factor [is] . . . whether the description is sufficient to enable to executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched . . . .").  The execution of a warrant with an inaccurate description will not run afoul of the Fourth Amendment if the officer can, based on his personal knowledge, ensure the search extends only to those areas for which there is probable cause to search. See United States v. Graham, 476 Fed. App'x 839, 841 (11th Cir. 2012) (holding "[a]lthough the search warrant erroneously mentioned [an incorrect] address," it  "still identified [the] apartment with sufficient particularity to satisfy the Fourth Amendment " because the "executing officers' personal knowledge of the residence to be searched cured any remaining ambiguity in the warrant"); Sklaroff, 323 F. Supp. at 321 (holding "the error in describing Apartment 310 as being on the second rather than the third floor of Building Number 3 was of such a minor nature as not to invalidate the search warrant"); cf. United States v. Ritter, 416 F.3d 256 (3d Cir. 2005) (holding the execution of a warrant that incorrectly described a multi-unit residence as a single-unit residence was valid, as long as the

officers limited their search to the places to which probable cause extended); Jacobs v. City of Chicago, 215 F.3d 758, 769 (7th Cir. 2000) ("At the moment the Defendant Officers discovered the defect in the description of the place to be searched, they were obligated to cease that search if they could not determine which apartment was properly the subject of the warrant.").

Here, the uncontested facts show that although the search warrant incorrectly described the target apartment to be searched as located on the second floor, it "still identified [the] apartment with sufficient particularity to satisfy the Fourth Amendment" given "the executing officers' personal knowledge of the residence to be searched." Graham, 476 Fed. App'x at 841. There is no dispute that Officer Markovich's investigation had focused on the white door located at the back of 1116 East High Street. (Markovich Dep., Def. Ex. B, at 19-21) ("Our focus was the white door in the back of this residence."). This was the door from which Markovich had seen an individual exit and re-enter when making sales of heroin to a confidential informant. (Id. at 11; see also Incident Investig. Report, Def. Ex. E, at 4-6). There is also no dispute that the only apartment to which the white door leads is Harper's, on the first floor. (Harper Dep., Def. Ex. D, at 25). The second floor apartment is accessible only by entering the front door of 1116 East High Street, proceeding through a second doorway, and taking a staircase upstairs. (Id. at 22-23). Thus, the agreed-upon facts show that despite the defect in the warrant, the officers "were able to determine which apartment was properly the scope of their investigation" upon their entry through the rear door. Jacobs, 215 F.3d at 769. There was no risk their search would extend to an improper area, because the only apartment accessible from the door was that which they intended to search in the first place. No reasonable trier of fact could conclude, based on this record, that the execution of the warrant was unreasonable.

Furthermore, the officers are entitled to qualified immunity because their actions were reasonable under clearly established law. Qualified immunity is an affirmative defense available to government officials sued in their personal capacities. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). It can be invoked through a motion for summary judgment or during trial, and it will attach if the official can demonstrate his conduct was "objectively reasonable." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). There are two prongs to the objective reasonableness inquiry: first, whether the plaintiff's rights were in fact violated; second, whether it would have been evident to a reasonable officer at the time that the challenged conduct ran afoul of "clearly established" law. Saucier v. Katz, 533 U.S. 194, 200-02 (2001). If the official can show at least one prong of the test was not met, he will qualify for immunity. Pearson v. Callahan, 555 U.S. 223 (2009); Reedy v. Evanson, 615 F.3d 197, 223-24 (3d Cir. 2010).

Defendant officers are entitled to qualified immunity for their execution of the search warrant because the undisputed facts show a reasonable officer in their shoes would have assumed the search authorized by clearly established law. Granted, the warrant described the target apartment as located on the second floor. But Sergeant Markovich, a member of the team executing the warrant, had observed a seller of heroin exit and re-enter the rear door of 1116 East High Street and thus knew that there was probable cause to search whatever apartment was connected to it. A reasonable officer in his shoes or as part of his search team, realizing upon entry through the door that it led only to a first floor apartment, would have proceeded with the search. [4]

---

[4] Additionally, under the rule established in United States v. Leon, 468 U.S. 897 (1984), "[w]here the Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective food faith.'" Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012); see also Malley v. Briggs, 475 U.S. 335, 344 (1986) (holding that Leon's good faith exception to the warrant requirement applies not only in the context of a

While the Court grants summary judgment to Defendants on the issue of whether the search was unconstitutional due to defects in the warrant (it was not, and the officers are also entitled to qualified immunity), Plaintiffs challenge the search on a second ground: they argue it was unconstitutional because the officers consummated it before the warrant was signed. As to this claim, the Court finds there is a genuine dispute of fact.

Both parties agree the search warrant for 1116 East High Street was signed by a District Justice at 8:50 p.m. (See Search Warrant, Def. Ex. F). But the parties disagree as to whether the search occurred before or after this time. Plaintiffs contend the search began at about 8:00 p.m. and concluded at about 9:00 p.m. (ECF 44, at 4). Alicia Doster stated in her deposition that she arrived at 1116 East High Street at 7:55 p.m., that Harper and Levi came home shortly thereafter, and that "a max ten minutes" later, the officers arrived. (Doster Dep., Def. Ex. K, at 15, 19). Harper stated she was taken "outside to wait for the officer with the search warrant" once the search was complete, was handed "the paperwork," and then reentered the house, noticing it was about 9:00 p.m. (Harper Dep., Def. Ex. D, at 48). Meanwhile, Defendants' evidence is in conflict with these accounts – Sergeant Markovich stated the search warrant was served at 9:30 p.m. (Markovich Dep., Def. Ex. B, at 30-31); his Incident Report states the warrant was served at "2130 hrs" (Incident Investig. Report, Def. Ex. E, at 6); and Defendants provided dispatch recordings suggesting the search occurred around 9:30 p.m. (Police Radio Recordings, Def. Exs. H-J).

The dispute regarding the timing of the search is not only genuine, but material. If the officers knowingly and intentionally searched Harper's home before obtaining a warrant, their

<hr/>

suppression hearing, but also in actions brought under Section 1983 to define the qualified immunity accorded to the officer). While "[t]he 'shield of immunity' otherwise conferred by the warrant will be lost . . . where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official believe in its existence entirely unreasonable[,] . . . the threshold for establishing this exception is a high one, and it should be." Messerschmidt, 132 S. Ct. at 1245.

search would likely have run afoul of the Fourth Amendment. As a result, Plaintiffs would have a strong basis on which to seek relief for false imprisonment, false arrest, and malicious prosecution, under Section 1983. Meanwhile, if the search was undertaken after the warrant had been signed, Plaintiffs' claims would be far weaker. These questions surrounding the timing and sequence of the search are properly resolved by the trier of fact, after hearing evidence from both sides and making credibility determinations. Summary judgment as to the overall constitutionality of the search cannot be granted.

### b. Constitutionality of the Seizures

Given the Court's inability to resolve the constitutionality of the search, the Court also cannot resolve the constitutionality of Plaintiffs' seizures or the officers' entitlement to qualified immunity for the seizures through summary judgment.

Plaintiffs' claims under Section 1983 for false imprisonment, false arrest, and malicious prosecution all stem from their challenge to the underlying search – that is, Plaintiffs argue that because the search was unconstitutional, Defendants lacked justification to detain, arrest or charge Plaintiffs with crimes, once they were found inside the residence.[5] The case law is clear that when officers are lawfully executing a search warrant, they may temporarily detain the

---

[5] To prevail in a claim of malicious prosecution or false arrest under Section 1983, a plaintiff must show an absence of probable cause to arrest. See McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009) (holding the elements of a claim of malicious prosecution under Section 1983 are: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceeding); Dowling v. City of Philadelphia, 855 F.2d 136, 131 (3d Cir. 1988) (holding the elements of a claim of false arrest under Section 1983 are that the plaintiff was arrested and the arrest was made without probable cause). To prevail in a claim for false imprisonment, a plaintiff must show that she was detained without sufficient justification. James v. City of Wilkes-Barre, 700 F.3d 675, 683 (3d Cir. 2012) ("To state a claim for false imprisonment, a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful"). See generally Wallace v. Kato, 549 U.S. 384, 388-89 (2007) (explaining that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter" and that "[e]very confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets").

occupants of the residence to ensure officer safety and prevent flight. Michigan v. Summers, 452 U.S. 692, 701-03 (1981). They may also seize items in plain view, for which they gain probable cause to believe are contraband or evidence of a crime. Arizona v. Hicks, 480 U.S. 321, 326 (1987). Additionally, in the circuits that have reached the issue, officers may arrest individuals found inside a home "when [a] lawful search uncovers probable cause that the suspect has committed a crime." Malhberg v. Mentzer, 968 F.2d 772, 774-5 (8th Cir. 1992); see also Russell v. Harms, 397 F.3d 458, 466 (7th Cir. 2005); United States v. Winchenbach, 197 F.3d 548, 553-54 (1st Cir. 1999); Jones v. City of Denver, 854 F.2d 1206, 1209 (1988). But if the search is not constitutional, the officers will not be in a position to seize items or persons found on the premises, because whatever justification they were to obtain for the seizures would be a direct result of a constitutional violation. See United States v. Segura, 468 U.S. 796, 804 (1984) ("Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion."); Unites States v. Stabile, 633 F.3d 213, 241 (3d Cir. 2011) (holding "the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed").

 Here, Harper, Doster and Levi were subjected to seizures of varying degrees as a direct consequence of the search of the Harper residence. All three individuals were detained within the apartment while the search was executed, being made to lie on the ground, sit in chairs, and placed in handcuffs. (Levi Dep., Def. Ex. C, at 30-32; Harper Dep., Def. Ex. D, at 28, 34, 40-41; Doster Dep., Def. Ex. K, at 23-24). Harper and Levi were charged with possession of marijuana and drug paraphernalia as a result of the evidence uncovered in the apartment. (See Incident Investig. Report, Def. Ex. E, at 6-7). Levi was arrested and taken into police custody. (Id. at 7). These restraints all qualify as Fourth Amendment "seizures." Scott v. Harris, 550 U.S. 372, 381

(2007) (holding "a Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied").

But given that the Court cannot resolve the constitutionality of the search of Harper's apartment, the Court also cannot resolve the legitimacy of the resulting seizures. Nor can the Court determine whether Defendants are entitled to qualified immunity – for the reasonableness of their conduct turns on whether Defendants arrived at 1116 East High Street with a search warrant in hand. Had they arrived without a warrant, it would likely have been unreasonable for the officers to assume they could enter the apartment and consummate searches or seizures of persons inside. See United States v. Burton, 288 F.3d 91, 102 (3d Cir. 2002) ("Searches of a home without a warrant are presumptively unreasonable under the Fourth Amendment.").

In sum, the Court denies summary judgment to Defendants with regards to Plaintiffs' claims under Section 1983 for false imprisonment, false arrest, and malicious prosecution, given the genuine dispute of fact regarding the timing and sequence of the search. However, there is an exception: Doster and Harper's federal actions for false arrest and malicious prosecution *can* be resolved through summary judgment, and summary judgment is warranted for Defendants on those claims, because the undisputed facts show neither Doster nor Harper experienced restraints sufficient to sustain their claims. With regards to false arrest, neither Doster nor Harper has presented evidence showing they were formally arrested or treated in a manner that approximates a formal arrest. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2010) ("To state a claim to false arrest under the Fourth Amendment, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause."); Bonner v. State of N.J., 2012 WL 254138, at *3 (D.N.J. Jan. 27, 2012) ("It is [] undisputed that Plaintiff was not arrested and therefore cannot succeed on a claim for false arrest . . ."). As to malicious prosecution, Doster

was not charged with a crime, and although Harper was charged with possession of marijuana and drug paraphernalia, the only consequence she suffered was being required to appear at a hearing. (Harper Dep., Def. Ex. D, at 56-57). Under Third Circuit law, a plaintiff in a malicious prosecution suit under Section 1983 must prove not only the elements of the common law tort but also that she was deprived of liberty. Gallo v. City of Phila., 161 F.3d 217, 222 (3d Cir. 1998) ("[A] plaintiff asserting a malicious prosecution claim must show some deprivation of liberty consistent with the concept of seizure."). Being required to appear at a hearing, when the defendant was not detained before the hearing, made to post bail, or otherwise restrained, falls short. Clifton v. Borough of Eddystone, 824 F. Supp. 2d 617, 632 (E.D. Pa. 2011) ("Compulsory attendance at trial, by itself, does not meet the deprivation of liberty requirement."); Foster v. David, 2006 WL 2371976, at *8 (E.D. Pa. Aug. 11, 2006) (Baylson, J.) ("As a matter of law, a summary citation and having to attend one's trial, without more, 'is not a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action . . . .") (internal citations omitted); Bristow v. Clevenger, 80 F. Supp. 2d 421, 430 (M.D. Pa. 2000) (holding it was not a deprivation of liberty when a defendant was processed, fingerprinted, released on her own recognizance without being subject to bail forfeiture, and then required to attend a pretrial conference and one judicial proceeding at which her record was expunged). Accordingly, summary judgment is granted to Defendants on Harper and Doster's claims under Section 1983 to the extent they hinge on false arrest and malicious prosecution.

## 2. Claims Based on the Strip Searches

Plaintiffs' second set of claims under Section 1983 are based on the strip searches they experienced, which they claim violated their rights under the Fourth and Fourteenth Amendments.

The strip searches of Doster, Harper and Levi were consummated pursuant to the search warrant for 1116 East High Street. The warrant provided: "The search to include *all occupants* of 1116 E. High St. 2nd floor Pottstown, Pa due to the fact that the items to be searched for are small enough to be concealed on their person." (Warrant, Def. Ex. F) (emphasis added). Under Third Circuit precedent, "a warrant may authorize the search of all persons present if there is probable cause to believe that a premises is dedicated to criminal activity." United States v. Abbott, 574 F.3d 203, 212 (3d Cir. 2009). This is specifically the case where the police have probable cause to believe the residence is being used "frequently [to] sell and stash narcotics." Id. at 212. Defendants contend there was probable cause to believe Harper's residence was being used for drug sales because, as alleged in the Affidavit of Probable Cause, Sergeant Markovich had witnessed two controlled sales of heroin by an individual exiting and re-entering the rear door of the house. (Affidavit of Probable Cause, Def. Ex. A, at 3-5). Furthermore, Defendants argue, the officers' probable cause to strip search Plaintiffs was reinforced when they executed the warrant and found marijuana on the premises.

While Defendants' argument is compelling, summary judgment as to the constitutionality of the strip searches and as to the officers' qualified immunity cannot be granted. The dispute of fact regarding whether the officers arrived with a warrant affects not only the constitutionality of the apartment search and the resulting seizures, *see supra*, but also the reasonableness of the strip searches. Had Defendants arrived at the residence without a warrant, their strip searches of Plaintiffs– even if later authorized by the warrant – would have been the direct product of what was likely an unconstitutional entry. See Segura, 478 U.S. at 804.

**B.  Plaintiffs' Claims under State Tort Law**

**1.  False Imprisonment, False Arrest, Malicious Prosecution**

Plaintiffs' Complaint includes claims under Pennsylvania tort law for false imprisonment, false arrest and malicious prosecution, in addition to Plaintiffs' corollary claims under Section 1983. (See ECF 4). All three Plaintiffs join Counts III and IV, for false imprisonment and false arrest, while only Harper and Levi joint Count II, for malicious prosecution. (Id.).

Under Pennsylvania law, the elements of false imprisonment are: (1) the detention of another person; and (2) the unlawfulness of such detention. Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994); see also Verdier v. Borough, 796 F. Supp. 2d 606, 631 (E.D. Pa. 2011) (Baylson, J.). The elements of false arrest are: (1) an arrest made without probable cause; or (2) an arrest made by a person without privilege to do so. Colbert v. Angstadt, 169 F. Supp. 2d 352, 358 (E.D. Pa. 2001). Meanwhile, the elements of malicious prosecution are that the defendant: (1) instituted proceedings against the plaintiff; (2) without probable cause; (3) with actual malice; and (4) that the proceedings terminated in the plaintiff's favor. Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).

For the same reason the Court declines to grant summary judgment to Defendants on Plaintiffs' Section 1983 claims for false imprisonment, false arrest and malicious prosecution – i.e., because the dispute as to the timing of the search forecloses the Court's ability to determine the reasonableness of the resulting seizures – the Court declines to resolve Plaintiffs' corollary claims under state law at summary judgment. The exception is for Doster and Harper's actions for false arrest, for which summary judgment is granted to Defendants. Neither Doster nor Harper presented evidence showing they were formally arrested or subjected to a degree of restraint that qualifies as an arrest under Pennsylvania law. See Bristow, 80 F. Supp. 2d. at 435-46 (denying a plaintiff's action for false arrest under Pennsylvania law because "although a criminal complaint was filed against Plaintiff, there is no evidence that she was ever arrested");

<u>Cox v. Hackett</u>, 2006 WL 2129060, at *5 (E.D. Pa. July 27, 2006) (holding there was "no grounds to continue a false arrest claim [under state law] against Officer Hackett" because "an officer who did not arrest the plaintiff cannot be charged with false arrest") (internal citation omitted); <u>Colbert</u>, 169 F. Supp. 2d at 359 (holding a plaintiff could not prevail on a false arrest claim under state law when he "was not formally arrested" and had not been subject to "a 'restraint on freedom of movement of the degree associated with a formal arrest'") (internal citation omitted).[6]

### 2. Intentional and Negligent Infliction of Emotional Distress

Plaintiffs include causes of action for intentional and negligent infliction of emotional distress under Pennsylvania. Count V alleges, "[t]he aforementioned actions of Defendants directly resulted in Plaintiffs' arrest and detention without probable cause" and these "actions were willful, intentional, and reckless." (Amended Complaint ¶¶ 59-60) (ECF 4). Count VI is labeled "negligence infliction of emotional distress," although it contains identical language to that included in Count V. (<u>Id.</u> ¶¶ 64-65).

The tort of intentional infliction of emotional distress requires conduct of an "extreme or outrageous type." <u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d Cir. 1988). "Pennsylvania courts have been chary to declare conduct 'outrageous' so as to permit recovery . . . and have allowed recovery 'only in limited circumstances where the conduct has been clearly outrageous.'" <u>Id.</u> (internal citation omitted). As the Pennsylvania Superior Court has stated, "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

---

[6] The Court notes that although it granted summary judgment to Defendants for Harper's malicious prosecution claim under Section 1983, it declines to do so for her corollary claim under state law. The reason is that a Section 1983 claim for malicious prosecution requires a showing of a deprivation of liberty, which Harper failed to make, while the Pennsylvania law claim does not require such a showing.

society.'" <u>Buczek v. First Nat'l Bank of Mifflintown</u>, 531 A.2d 1122, 1125 (Pa. Super. 1987) (internal citation omitted). Additionally, under Pennsylvania law, a plaintiff must prove that he or she suffered an injury as a result of the outrageous conduct, supported by "competent medical evidence." <u>Kazatsky v. King David Mem'l Park, Inc.</u>, 527 A.2d 988, 995 (Pa. 1987).

The tort of negligent infliction of emotional distress in has been "limited by court decisions" in Pennsylvania, such that "[i]n order to recover, the Plaintiff must prove one of four elements: (1) that the Defendant had a contractual duty or fiduciary duty toward him; (2) that Plaintiff suffered a physical impact; (3) that Plaintiff was in a 'zone of danger' and a risk of an immediately physical injury; or (4) that Plaintiff had a contemporaneous injury to a close relative." <u>Doe v. Phila. Cmty. Health Alts. AIDS Task Force</u>, 745 A.2d 25, 27-28 (Pa. Super. Ct. 2000). "In all cases, a Plaintiff who alleges negligent infliction of emotional distress must suffer immediate and substantial physical harm." <u>Id.</u>

The Court grants summary judgment to Defendants on Plaintiffs' claims of intentional and negligent infliction of emotional distress for two reasons. First, there are no facts in dispute evidencing that Plaintiffs suffered emotional or physical injuries as a result of Defendants' conduct on March 20, 2009. Plaintiffs have put forth no "competent medical evidence" of either emotional or physical injury. Second, there are no facts in dispute demonstrating Defendants' conduct was "extreme or outrageous" or that it negligently placed Plaintiffs in a zone of physical injury. Even had the officers arrived at the Harper residence before obtaining a search warrant – as Plaintiffs allege and as their facts suggest – this would not qualify as conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Buczek</u>, 531 A.2d at 1125. Nor would it qualify as negligent conduct that created a risk of immediate physical injury. <u>See</u>

Milbourne-Hunter v. Hittle, 2012 WL 5677470, at *3 (E.D. Pa. 2012) (holding, in a Section 1983 case, that plaintiffs had "point[ed] to no record evidence creating a material dispute of fact about any of these four elements" of an NIED claim and so "summary judgment [wa]s proper").

### C. Plaintiffs' Claims Against Municipal Defendants

#### 1. Claims under Section 1983

It is unclear whether Plaintiffs included the municipal defendants, the Borough of Pottstown and the Pottstown Police Department, in their cause of action under Section 1983. Count I does not specify which defendants are encompassed, whereas Counts II through VII specifically list "Borough" and "PPD" as defendants. (See Amended Complaint, ¶¶ 37-71) (ECF 4). To the extent Plaintiffs intended to include the Borough of Pottstown and the Pottstown Police Department in the Section 1983 claim, summary judgment is granted to Defendants. For municipal entities to be liable under 42 U.S.C. § 1983, a plaintiff must demonstrate an official policy, practice or custom of the agency that is responsible for his or her constitutional injury. Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 694-95 (1978). Plaintiffs point to no facts in the record evidencing an official policy, practice or custom at the Borough of Pottstown or the Pottstown Police Department that gave rise to their constitutional injuries.

#### 2. Claims under Pennsylvania State Law

Plaintiffs name the Borough of Pottstown and the Pottstown Police Department as defendants in each of their causes of action under state law. (See Amended Complaint, ¶¶ 37-71) (ECF 4). The Court grants summary judgment to Defendants as to the liability of the municipal defendants, for all claims under Pennsylvania law.

The Pennsylvania Political Subdivision Tort Claims Act immunizes local agencies from suit in actions for damages to persons or property. It provides: "Except as otherwise provided in

this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. While Section 8542(b) provides eight exceptions to the grant of immunity under Section 8541 for certain negligent acts, none of those exceptions applies to Plaintiffs' actions here – for false arrest, false imprisonment, malicious prosecution, NIED, and IIED. See 42 Pa. C.S. § 8542(b) (providing "[t]he following acts by a local agency or any of its employees may result in the imposition of liability on a local agency" and listing acts involving vehicle liability; care, custody or control of personal property; trees; traffic controls and street lighting; utility service facilities; streets; sidewalks; and the care, custody or control of animals); see also Gallashaw v. City of Phila., 774 F. Supp. 2d 713, 719 (E.D. Pa. 2011) ("[A]s a general matter, claims of false arrest, false imprisonment, and intentional infliction of emotional distress are not actionable against the City of Philadelphia. . . There are eight exceptions to this immunity for acts of negligence, but false arrest, false imprisonment, and intentional infliction of emotional distress are not included."). Accordingly, the Borough of Pottstown and the Pottstown Police Department are not liable for any of Plaintiffs' claims arising under Pennsylvania law.

***

For the reasons stated, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Namely, summary judgment is GRANTED to Defendants on the following issues:

(1) Plaintiffs' contention that the search of the Harper residence, and the resulting seizures of Doster, Harper and Levi, were unconstitutional due to defects in the warrant;

(2) Harper's action for malicious prosecution under Section 1983;

(3) Harper and Doster's actions for false arrest under Section 1983;

(4) Harper and Doster's actions for false arrest under Pennsylvania law;

(5) Plaintiffs' actions under Pennsylvania law for negligent infliction of emotional distress and intentional infliction of emotional distress; and

(6) liability of the Borough of Pottstown and the Pottstown Police Department for any of Plaintiffs' claims, either under Section 1983 or under Pennsylvania law.

Meanwhile, summary judgment is DENIED to Defendants on the following issues:

(1) Plaintiffs' contention that the search of the Harper residence, and the resulting seizures and strip searches of Doster, Harper and Levi, were unconstitutional due to the officers' failure to obtain a search warrant before executing the search; and

(2) Plaintiffs' corollary claims under Pennsylvania law – namely, Levi's action for false arrest under Pennsylvania law, Levi and Harper's actions for malicious prosecution under Pennsylvania law, and all three Plaintiffs' actions for false imprisonment under Pennsylvania law.

An appropriate Order follows.